```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ALABAMA
                        NORTHEASTERN DIVISION

ED B. HAYES; JAN M. PHILLIPS;    )
JAMES H. YOUNG,                  )
                                 )
     PLAINTIFFS,                 )
                                 )
VS.                              )     CV98-H-1669-NE
                                 )
CHRYSLER CORPORATION,            )
                                 )
     DEFENDANT.                  )
```

FILED

99 SEP -1  AM 10: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

SEP 0 1 1999

## MEMORANDUM OF DECISION

The Court has before it defendant Chrysler Corporation's July 15, 1999 motion for summary judgment. Pursuant to the Court's July 19, 1999 order, the motion was deemed submitted, without oral argument, on August 16, 1999.

### I. Procedural History

Plaintiffs Ed B. Hayes, Jan M. Phillips, and James H. Young commenced this action on June 29, 1999 by filing a complaint in this Court, alleging that defendant Chrysler Corporation ("Chrysler") discriminated against each of them on the basis of age, in violation of the Age Discrimination in Employment Act (ADEA). Plaintiffs contend that prior to defendant's sale of Pentastar Electronics ("Pentastar"), the Chrysler subsidiary for which plaintiffs worked, defendant instituted a freeze on employment transfers at Pentastar, thereby precluding them from transferring to another position within the Chrysler Corporation. Plaintiffs argue that other Pentastar employees outside the protected class were permitted to transfer prior to the sale.

Plaintiffs assert two theories in support of their alleged rights to transfer: 1) a collective bargaining agreement to which plaintiffs were subject prior to assuming management-level positions at Pentastar and 2) the general past practices and policies at Chrysler which allowed employees to bid and interview for positions within the corporation.  Plaintiffs allege further that the freeze on employment transfers and defendant's ultimate sale of Pentastar resulted in a disparate impact to plaintiffs, in that they lost various employee benefits to which they allegedly would have been entitled had they been permitted to remain Chrysler employees.  In essence, plaintiffs claim that defendant's facially non-discriminatory decision to sell Pentastar and its concomitant decision to enact the freeze were actually motivated by a desire to avoid paying employment and retirement benefits to older employees.  Defendant's July 15, 1999 motion for summary judgment asserts that plaintiffs have failed to establish a prima face case for any of plaintiffs' claims.  In support of its motion, defendant filed the depositions of Ed B. Hayes, Jan M. Phillips, and James H. Young with their respective exhibits.  Defendant also filed an affidavit from John Stellman and George Johnson, as well as a brief.  Plaintiffs filed <u>no</u> response to defendant's motion, either in the form of evidence or a reply brief.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears

the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's

4

claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

The following are the relevant undisputed facts, unless otherwise noted. In November of 1996, a purchase agreement was signed between defendant Chrysler and an investment group called Hickory Capital Fund for the sale of Pentastar, a Huntsville-based subsidiary of Chrysler.[1] (Stellman Aff. ¶ 7.) The terms

---

[1] To be precise, Pentastar Electronics was wholly-owned by Chrysler Technologies, Inc., which was Chrysler Corporation's wholly-owned subsidiary. (Stellman Aff. ¶ 1.) Chrysler Technologies functioned as a holding company for Chrysler Corporation's aerospace and defense operations, and Pentstar was just one of numerous companies that comprised Chrysler Technologies. (Stellman Aff. ¶ 2.) The other Chrysler Technologies companies included Gulfstream Aerospace, Electrospace Systems, Airborne Systems, and Chrysler Technologies International. (Stellman Aff. ¶ 2.) All of these companies were sold between 1994 and 1996 as part of Chrysler's effort to divest all its defense operations. (Stellman Aff. ¶ 3.)

5

and conditions of the sale dictated that the purchaser would be fully responsible for all of Pentastar's existing contracts and programs and would retain all non-bargaining unit employees. (Stellman Aff. ¶ 7.) The new entity emerged as PEI Electronics, Inc. ("PEI") and began its operations on January 13, 1997. (Stellman Aff. ¶ 10; Compl. ¶ 10.)

At the time of the sale, all three plaintiffs were employees of Pentastar. (Hayes Depo., p.24; Young Depo., p. 25, Phillips Depo., p.15) Plaintiff Phillips was 52 years old and had 23 years of service with Chrysler at the time of the sale; plaintiff Hayes was age 52 with 23 years of service with Chrysler; and plaintiff Young was age 52 with 20 years of service with Chrysler. (Phillips Depo., p. 7,100; Hayes Depo., p. 9, 18-19; Young Depo p. 11, 16-17.) Also, at the time of the sale, all three plaintiffs occupied management level, non-bargaining unit positions with Pentastar. (Compl. ¶¶ 7,8,9.) In years prior, however, each plaintiff had belonged to the collective bargaining unit of Chrysler. (Compl. ¶ 12.) As a result of the sale of Pentastar, plaintiffs became employees of PEI, and each appears to remain PEI employees to the present date. (Hayes Depo., p. 103.)

After the purchase agreement was signed between Hickory Capital and Chrysler, Chrysler instituted a freeze on employment transfers at Pentastar. (Stellman Aff. ¶ 8.) The freeze was implemented to keep the non-bargaining unit workforce in tact to further its goal of maintaining Pentastar as a viable operation

until the sale closed. (Johnson Aff. ¶ 10; Stellman Aff. ¶ 4.) Consequently, no non-bargaining unit employees were allowed to transfer to new positions within Chrysler, unless the transfer was sought prior to the freeze period. (Stellman Aff. ¶ 9.)

Plaintiffs contend that they were prevented from transferring because of their ages, and allege that other "younger" employees were permitted to transfer during the freeze period. (Compl. ¶¶ 16,23.) Plaintiffs assert two bases upon which they should have been permitted to transfer. First, plaintiffs rely on a letter which is incorporated into the Collective Bargaining Agreement ("CBA") between the United American Workers ("UAW") and Pentastar, which governed their employment as bargaining-unit employees prior to assuming their management-level positions with Pentastar. (Hayes Depo., p. 191; Young Depo., p.65; Phillips Depo., p. 130-31.) The letter, entitled "Hiring Practices," states in relevant part:

> We have discussed at length the subject of giving employment consideration to former salaried employees who have lost their seniority rights when we are hiring employees into salaried represented positions.
>
> We advised you that while we retain the right to make employment determinations, it shall be the practice of the Corporation to give consideration to the employment applications of such individuals, presuming (i) they have appropriate qualifications for the open position, and (ii) their prior employment record was satisfactory.

(<u>Collective Bargaining Agreement</u>, Engineering & Clerical Office, p. 347, attached as Exhibit 2 to Phillips' deposition.)

As a second basis for their alleged right to transfer, plaintiffs assert that the past practices and policies of

7

Chrysler allowed for returning non-bargaining unit employees to the bargaining unit. (Hayes Depo., p. 183-85; Young Depo., p. 65; Phillips Depo., p. 148.) Relying on both or either basis, plaintiffs claim that their "right" to transfer was deprived solely because of their age. (Compl. ¶¶ 14, 15).

As a result of defendant's alleged refusal to allow plaintiffs to transfer, plaintiffs claim to have lost employee and retirement benefits to which they would have been entitled had they been permitted to remain Chrysler employees. (Compl. ¶ 14.) Plaintiffs also claim that had Chrysler not sold Pentastar, but instead closed Pentastar or laid off Pentastar employees, they would have been entitled to various employee and retirement benefits.[2] (Compl. ¶¶ 27, 28.)

Among the Pentastar non-bargaining unit employees who were allegedly permitted to transfer, all posted for the transfers outside the freeze period and only one is under the age of 40. (Johnson Aff. ¶ 9.). With regard to the benefits in question, defendant asserts that any loss plaintiffs allege to have suffered were merely incidental to the sale of Pentastar, which was accomplished for a legitimate business purpose. (Johnson Aff. ¶ 10; Stellman Aff. ¶ 7; Defendant's Brief in Support of Motion for Summary Judgment, p. 31-33.) It is undisputed that no

---

[2]Specifically, plaintiffs Hayes and Phillips claim to have lost eligibility under the Chrysler benefit plan to take early retirement, and plaintiff Young, who was called to return to work from temporary lay-off status just prior to PEI's beginning operations, claims that he was deprived of his eligibility to "grow-in" to retirement pursuant to the Chrysler plan. (Compl. ¶¶ 33-34, 39-40.)

8

plaintiff formally posted for a position within Chrysler, either inside or outside of the freeze period. (Hayes Depo., p. 112; Young Depo., p. 59; Phillips Depo., p. 109.) At most, plaintiffs asked their supervisor about the possibility of returning to the bargaining unit, and only plaintiff Phillips alleges that he referenced a specific position. (Young Depo., p. 68; Hayes Depo., p. 200-01; Phillips Depo., p. 37-38.) No plaintiff pursued the matter any further prior to bringing the present suit.

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint essentially consists of two claims: (1) defendant Chrysler's refusal to permit plaintiffs to transfer from Pentastar amounted to discrimination on the basis of age and (2) defendant's sale of Pentastar had a disparate impact on plaintiffs in that it deprived plaintiffs of their status as Chrysler employees and of any employee benefits to which they would have been entitled had they been permitted to remain Chrysler employees.

A.  <u>Plaintiffs' Disparate Treatment Claim</u>

In employment discrimination cases, courts have long distinguished between "disparate treatment" and "disparate impact" as theories of liability. <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 609, 113 S. Ct. 1701, 1705 (1993). Disparate treatment occurs when "[t]he employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics]." <u>Hazen Paper</u>, 507 U.S. at

609, 113 S. Ct. at 1705. Disparate impact, by contrast, arises when "employment practices ... are facially neutral in their treatment of different groups but ... in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. Under the ADEA, the disparate treatment theory is clearly available. Hazen Paper, 507 U.S. at 609, 113 S. Ct. at 1706. The ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

The substance of plaintiffs' disparate treatment claim is that because of their age, defendant Chrysler refused to allow plaintiffs to transfer prior to the sale of Pentastar, thereby effectively terminating their status as Chrysler employees.[3]

---

[3] Plaintiffs do not specifically allege "disparate treatment" in their complaint. However, in Counts One and Two of the Complaint plaintiffs cite to Chrysler's "failure to follow company policy and practice" in refusing to allow them to transfer and Chrysler's alleged "intentional, wilful discrimination." Additionally, plaintiffs allege in Counts One and Two that "[o]ther employees outside the protected class were allowed to bid, interview[,] and be transferred to other Chrysler facilities using the Chrysler policy." Plaintiff does also claim in Counts One and Two that defendant's alleged failure to follow company policy resulted in a disparate impact to them. However, because disparate impact claims must rest on facially neutral policies which result in discrimination when applied, and not a defendant's overt refusal to adhere to a policy, plaintiffs claims in Counts One and Two are treated as disparate treatment claims. Finally, Plaintiffs claim "intentional and wilful discrimination" in Counts Three, Four, and Five also, yet the basis of these counts is that defendant's sale of the company and accompanying freeze (facially neutral decisions) had a

10

Under the ADEA, a prima facie case of age discrimination on the basis of disparate treatment may be established in one of three ways: 1) by presenting direct evidence of discriminatory intent; 2) by presenting circumstantial evidence which meets the standard set forth in <u>McDonnell Douglas Corp v. Green</u>; or 3) by showing through the use of statistics a pattern of discrimination. <u>Early v. Champion Intern Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990). For the reasons set forth below, this court finds that plaintiffs have failed to satisfy any of these requirements.

1. <u>Direct Evidence</u>

Direct evidence is "evidence which, if believed, would prove the existence of a fact without inference or presumption." <u>Carter v. City of Miami</u>, 870 F.2d 578, 582 (11th Cir. 1989). "Only the most blatant remarks, whose intent could be nothing other than discrimination on the basis of age, constitute direct evidence of discrimination." <u>Earley</u>, 907 F.2d at 1081 (11th Cir. 1990). Plaintiffs have provided no direct evidence that Chrysler had a discriminatory intent in instituting the freeze which precluded plaitiffs' ability to transfer. Nor have plaintiffs provided evidence that defendant ever made reference to age in denying their proposals to transfer. Further, plaintiffs concede that they were unsure of the basis for the freeze on employment transfers at Pentastar. Because plaintiffs cannot cite to any comment or even a suggestion by defendant that age was a factor

---

discriminatory effect on them. Thus, Counts Three, Four and Five are treated as disparate impact claims.

11

in implementing the freeze, plaintiffs cannot establish their case on the basis of direct evidence.

2. <u>The McDonnell Douglas Test for Circumstantial Evidence</u>

Plaintiffs have also failed to present sufficient circumstantial evidence to make out a prima facie case of disparate treatment. Under <u>McDonnell Douglas</u>, a plaintiff may establish a prima facie case based on circumstantial evidence by showing "(1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that despite his qualifications, he was rejected; and (4) that after his rejection the position remained open and the employer continued to seek applicants of similar qualifications." 411 U.S. at 802, 93 S. Ct. at 1824.

That plaintiffs are within a protected class is undisputed. Regarding application and qualification for another position, plaintiffs claim to have each made informal inquiries to their supervisor about transferring from Pentastar. However, no plaintiff claims to have actually posted for a specific position at any time relevant to this action. Because no specific position was ever sought, it is impossible to determine whether plaintiffs were qualified for another position. As the court held in <u>Earley</u>, plaintiff must show that a position is actually available within the company. <u>Earley</u>, 907 F.2d at 1083. Even if plaintiffs had formally sought a transfer for an available position, no plaintiff has demonstrated that he was qualified for any such position. <u>Id</u>. ("qualification for [plaintiff's] current

position is not enough"). Considering that plaintiffs failed to actually apply for a position, plaintiffs cannot logically claim that defendant discriminated against them by refusing to allow them to transfer. Assuming that the past policy and practice of defendant was to allow transfers within the corporation, it is clear that plaintiffs must at least apply for another position before challenging defendant's application of this policy.

Plaintiffs' reliance on the CBA between the UAW and Chrysler, including the letter incorporated therein, is also misplaced.[4] The contents of the letter did not give plaintiffs the right to transfer. The letter provides only that the corporation should give consideration to the applications of former salaried employees where "(i) they have appropriate qualifications for the open position, and (ii) their prior employment record was satisfactory." Collective Bargaining Agreement, Engineering & Clerical Office, p. 347, attached as Exhibit 2 to plaintiff Phillips' deposition.) Because the plaintiffs never posted or applied for any specific position, they cannot rely on this letter, which clearly requires an employee to apply for an open position. Further, plaintiffs have not demonstrated that they had the requisite appropriate qualifications for a position which was available. Plaintiffs have simply failed to carry their burden for a prima facie case of disparate treatment under McDonnell Douglas.

---

[4] See Facts, supra at p. 7 for complete contents of the CBA letter.

13

3.  <u>Statistical Evidence</u>

Plaintiffs' final possibility for establishing their disparate treatment claim is on the basis of statistical evidence which demonstrates a pattern of discrimination.  Plaintiffs claim that defendant treated them differently in allowing some employees to transfer while not allowing plaintiffs to transfer. Specifically, plaintiffs claim that other employees in the past have been permitted to return to the bargaining unit from management level positions or to transfer to other positions within Chrysler.  However, plaintiffs have produced no evidence to support their claim.  Plaintiffs point to one individual who was allegedly permitted to return to the bargaining unit prior to the sale of Pentastar, but concede that they are unaware of the circumstances surrounding the transfer.  Defendant, however, has indicated that the individual whom plaintiffs reference was actually demoted, not voluntarily transferred.  Further, regarding the employees whom plaintiffs allege were allowed to transfer prior to the sale of Pentastar, all posted for the transfers outside the freeze period, and three of the four employees were within the protected class.  Plaintiffs could have posted for transfers similar to these employees, and would have likely been transferred as were these employees.  However, plaintiffs did not make efforts to apply for other positions prior to the enactment of the freeze.  Plaintiffs were thus forbidden from posting for another position during the freeze period as were all Pentastar non-bargaining unit employees.

Plaintiffs have presented no statistical evidence suggesting that they were treated any differently than other Pentastar employees with regard to the sale.

Because plaintiffs have no direct, circumstantial, nor statistical evidence to support its disparate treatment claim, defendant is entitled to judgment as a matter of law on this claim.

B.   <u>Plaintiffs' Disparate Impact Claim</u>

Although the Supreme Court has not yet decided the issue, the Eleventh Circuit has recognized disparate impact as a basis for liability under the ADEA. See <u>MacPherson v. University of Montevallo</u>, 922 F.2d 766, 770 (11th Cir. 1991).[5] Under the disparate impact theory, "discrimination can be established by proving that a facially neutral employment practice, which is unjustified by a legitimate business goal of the employer, has a *disproportionately adverse impact* on the members of a protected group." <u>MacPherson</u>, 922 F.2d at 771 (emphasis added). To establish a prima facie case using the disparate impact theory, "a plaintiff must isolate and identify 'the specific employment practices that are allegedly responsible for any observed

---

[5]<u>Cf</u>. <u>Ellis v. United Airlines, Inc.</u>, 73 F.3d 999, 1009 (10th Cir., <u>cert. denied</u>, 517 U.S. 1245, 116 S. Ct. 2500, 135 L.Ed.2d 191 (1996)(holding that disparate impact claims are not recognized under the ADEA); <u>DiBiase v. SmithKline Beecham Corp.</u>, 48 F.3d 719, 732-34 (3d Cir. 1995)(same); <u>Lyon v. Ohio Educ. Ass'n & Prof. Staff Union</u>, 53 F.3d 135, 138-39 (6th Cir. 1995)(same); <u>EEOC v. Francis W. Parker School</u>, 41 F.3d 1073, 1076-77 (7th Cir. 1994)(same); <u>Mullin v. Raytheon Co.</u>, 164 F.3d 696 (1st Cir. 1999)(concluding that because the ADEA requires intentional discrimination, the ADEA cannot support a claim for disparate impact).

15

statistical disparities.'" Id., 922 F.2d at 771 (quoting Wards Cove Packing Co., 490 U.S. 642, 109 S. Ct 2115 (1989)(discussing the disparate impact theory in a race discrimination case). Further, a plaintiff must show more than mere "imbalance" resulting from a particular employment practice. MacPherson, 922 F.2d at 771. Once a plaintiff establishes a prima facie case of disparate impact, "the burden shifts to the employer to produce evidence to justify its use of the challenged practice." Id. In this regard, 'the dispositive issue is whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer.' Id. (quoting Wards Cove, 490 U.S. at 659, 109 S. Ct at 2125-26).

In the present case, plaintiffs have not come forward with any evidence that the challenged employment practice had a "disproportionate adverse impact" on them, as is required to support a prima facie case under a disparate impact theory. The challenged practice at issue is Chrysler's decision to sell Pentastar with its non-bargaining unit workforce in tact, which resulted in the freeze on employment transfers at Pentastar prior to the sale. While the plaintiffs may have felt an impact from their inability to transfer from Pentastar and thereby remain Chrysler employees, plaintiffs have not proffered evidence that the impact they suffered was any different than that suffered by other Pentastar employees. Plaintiffs do point out that they were closer to retirement than some other employees, thus suggesting that the impact they suffered was more adverse than

16

that to younger employees, who arguably had less to lose than plaintiffs. However, the ADEA prohibits discrimination on the basis of age, not years of service. See Hazen Paper, 507 U.S. at 611, 113 S.Ct. at 1707-08.

Because the plaintiffs have not shown that they suffered a disproportionately adverse impact as a result of defendant's decision to sale Pentastar and institute the freeze, plaintiffs disparate impact claim also must fail. However, assuming arguendo that plaintiffs had established a prima facie case of disparate impact, defendant has nonetheless produced evidence tending to justify the employment practice in question. Defendant Chrysler's Vice- President of Mergers and Acquisitions and Chief Financial Officer of Chrysler Technologies Corporation stated that the "decision to sale Pentastar was based on Chrysler's announced strategy to divest all aerospace and defense businesses." (Stellman Aff. ¶ 7.) According to him, the "freeze [on employment transfers at Pentastar] was implemented so that the asset being transferred to Hickory Capital Fund would not be impaired. Chrysler's goal was to continue Pentastar as a viable operation with the non-bargaining unit workforce in tact ...." (Stellman Aff. ¶ 9.)

Although "the employer carries the burden of production in establishing its business justification, the burden of persuasion--and the ultimate burden of proving that the alleged discrimination has been caused by a specific employment practice--remains on the plaintiff at all times." MacPherson, 922 F.2d at

17

771 (citing <u>Wards Cove</u>, 490 U.S. at 659, 109 S.Ct, at 2126. Defendant has produced evidence establishing that the challenged practice served the legitimate business goals of the Chrysler Corporation: the sale of Pentastar furthered Chrysler's goal of divesting its defense operations companies and the freeze was implemented for the purpose of keeping the non-bargaining unit workforce in tact as part of the sale of Pentastar. Plaintiffs have simply produced no evidence to substantiate their claim of disparate impact. Accordingly, the defendant is entitled to summary judgment as a matter of law on the disparate impact claim.

IV.  <u>Conclusion</u>

In summary, the Court finds that no material issues of fact exist and that defendant Chrysler is entitled to judgment as a matter of law as to all claims asserted by plaintiff. A separate order will be entered.

DONE this _1st_ day of September, 1999.

_____
SENIOR UNITED STATES DISTRICT JUDGE